NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN WYATT,<br><br>　　　　Petitioner,<br><br>　　v.<br><br>CHARLES WARREN, et al.,<br><br>　　　　Respondents. | Civil Action No. 11-7112 (DRD)<br><br><br>OPINION |

**APPEARANCES**:

> BRIAN WYATT, 209000C
> New Jersey State Prison
> P.O. Box 861
> Trenton, New Jersey 08625
> 　　*Petitioner Pro Se*
>
> LUCILLE M. ROSANO, ESQ.
> ESSEX COUNTY PROSECUTOR
> 50 West Market Street
> Newark, New Jersey 07102
> 　　*Attorneys for Respondents*

**Debevoise, Senior U.S. District Judge**

　　Brian Wyatt filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 challenging a judgment of conviction filed in the Superior Court of New Jersey, Essex County, on June 14, 2004, imposing a term of 30 years in prison, subject to a 30-year period of parole ineligibility, for first-degree murder and related offenses. The State filed an Answer with the record and Wyatt filed a Reply. After carefully reviewing the arguments of the parties and the state court record, this Court will dismiss the Petition with prejudice and deny a certificate of appealability.

# I.   BACKGROUND

### A.   The Crime

On direct appeal the Appellate Division of the Superior Court of New Jersey described the facts surrounding the murder as follows:

> During an evening cookout on June 23, 2002, the victim, Clydell Leakes, attempted to hold a conversation with a woman identified only as defendant's niece. Apparently, the conversation soured quickly and developed into an argument. Defendant's niece called Leakes a "crackhead" and he called her a foul name. Defendant then interceded and told Leakes he could not "disrespect" his niece in that fashion. The two men stepped into the street as if to engage in a fistfight and Leakes swung at defendant but did not connect.
>
> The two men then walked away from the quarrel and nothing further occurred until the following night, June 24, 2002, while another cookout was ending in the same alley. Terrence Sheffield appeared at the cookout in order to sell drugs and actually sold three bags of crack cocaine to Leakes. Shortly afterwards defendant approached Leakes and told him that "he was not allowed to be around anymore." Sheffield intervened, and told defendant that it was not up to him to decide who did and did not come into the area to buy or sell drugs. Defendant left, saying "I be right back." [sic]  Minutes later, defendant returned to the alley and walked toward Leakes until he was standing approximately three feet away from him. Defendant's hand was covered by a white rag; he raised his arm to chest height. According to Sheffield, at that point four shots rang out. Leakes grabbed his chest and fell to the ground; he died before the authorities arrived.

State v. Wyatt, 2008 WL 877638 (N.J. Super. Ct., App. Div., Apr. 3, 2008).

### B.   The State Court Proceedings

After a trial by jury, Wyatt was found guilty of first-degree murder, third-degree unlawful possession of a weapon, and second-degree possession of a weapon for an unlawful purpose.  The trial court sentenced Wyatt to 30 years in prison without parole.  Wyatt appealed, and on April 3, 2008, the Appellate Division affirmed the conviction and sentence.  See State v. Wyatt, 2008 WL 877638 (N.J. Super. Ct., App. Div., Apr. 3, 2008).  On May 30, 2008, the New Jersey Supreme Court denied certification.  See State v. Wyatt, 195 N.J. 524 (2008) (table).

Wyatt filed a petition for post-conviction relief in the trial court on July 9, 2008. On November 4, 2009, the trial court denied relief without conducting an evidentiary hearing. Wyatt appealed, and on February 22, 2011, the Appellate Division affirmed. See State v. Wyatt, 2011 WL 589500 (N.J. Super. Ct., App. Div., Feb. 22, 2011). On July 14, 2011, the New Jersey Supreme Court denied certification. See State v. Wyatt, 207 N.J. 189 (2011) (table).

**C.  Procedural History of § 2254 Petition**

Wyatt signed his § 2254 Petition on October 13, 2011. The Clerk received it on December 5, 2011. The Petition raises six grounds, which are set forth below verbatim:

> Ground One:  THE STATE COURTS['] RULING THAT THERE WAS NO IMPROPER RESTRICTION OF CROSS-EXAMINATION OF AN EYEWITNESS[] CONCERNING BIAS FROM PRIOR COOPERATION WITH LAW ENFORCEMENT AS AN INFORMANT, INFRINGED DEFENDANT'S RIGHT TO CONTRONT WITNESSES AND HIS RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL.
>
> Ground Two:  THE STATE COURT'S RULING THAT THERE WAS NO IMPROPRIETY [IN] THE TRIAL COURT'S REFUSAL TO INSTRUCT THE JURY AND THAT DEFENDANT COULD BE CONVICTED OF PASSION PROVOCATION MANSLAUGHTER, AGGRAVATED MANSLAUGHTER, OR RECKLESS MANSLAUGHTER, AS LESSER INCLUDED OFFENSES OF MURDER, DEPRIVED DEFENDANT OF THE RIGHT TO DUE PROCESS OF LAW AND A FAIR TRIAL [AND] WAS CONTRARY TO CLEARLY ESTABLISHED LAW AND WAS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED[.] THEREFORE[,] THE WRIT SHOULD BE ISSUED.
>
> Ground Three:  THE STATE COURTS['] RULING THAT TRIAL COUNSEL WAS NOT REMISS BY FAIL[ING] TO OBJECT TO THE PROSECUTOR'S SUMMATION WHICH EXCEEDED THE BOUNDS OF PROPRIETY WAS CONTRARY TO CLEARLY ESTABLISHED FEDERAL LAW AND THEREFORE A WRIT SHOULD BE ISSUED.
>
> Ground Four:  THE STATE COURT'S RULING THAT APPELLATE COUNSEL WAS NOT REMISS BY FAILING TO RAISE THE IMPROPER NATURE OF THE PROSECUTOR'S SUMMATION ON APPEAL WAS CONTRARY TO CLEARLY ESTABLISHED LAW AND WAS AN

> UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED[.]   THEREFORE[,] THE WRIT SHOULD BE ISSUED.
>
> Ground Five:   THE STATE COURT'S RULING THAT [THE] TRIAL COURT DID NOT ERR IN DENYING DEFENDANT'S PETITION FOR POST CONVICTION RELIEF OR, AT MINIMUM, HOLDING AN EVIDENTIARY HEARING WHERE, AS HERE, DEFENDANT'S TRIAL ATTORNEY'S FAILURE TO EFFECTIVELY OBJECT TO THE TRIAL COURT'S ERRONEOUS APPLICATION OF INFORMER PRIVILEGE, WAS CONTRARY TO CLEARLY ESTABLISHED LAW AND WAS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED[.]   THEREFORE[,] THE WRIT SHOULD BE ISSUED.
>
> Ground Six:  THE STATE COURT'S RULING THAT TRIAL COURT DID NOT ERR IN DENYING DEFENDANT'S PETITION FOR POST CONVICTION RELIEF OR, AT MINIMUM, HOLDING AN EVIDENTIARY HEARING WHERE, AS HERE, DEFENDANT'S TRIAL ATTORNEY'S FAILURE TO INVESTIGATE OBVIOUS SIGNIFICANT AVENUES OF DEFENSE, INCLUDING THE CALLING OF A WITNESS WHO WOULD HAVE DIRECTLY EXCULPATED DEFENDANT, WAS CONTRARY TO CLEARLY ESTABLISHED LAW AND WAS AN UNREASONABLE DETERMINATION OF THE FACTS IN LIGHT OF THE EVIDENCE PRESENTED[.]   THEREFORE[,] THE WRIT SHOULD BE ISSUED.

(ECF Nos. 3 at 6, 12, 16, 20, 23, 28.)

The State filed an Answer arguing that Grounds Five and Six are unexhausted or procedurally defaulted[1] and that Wyatt is not entitled to habeas relief on any ground.  (ECF No. 14.)   Wyatt filed a Reply arguing that he has satisfied the standard for habeas relief.

---

[1] To the extent that Grounds Five and Six are unexhausted or procedurally defaulted, the Court will nevertheless deny these claims on the merits pursuant to 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State").  See Taylor v. Horn, 504 F. 3d 416, 427 (3d Cir. 2007) ("Here, because we will deny all of Taylor's claims on the merits, we need not address exhaustion"); Bronshtein v. Horn, 404 F. 3d 700, 728 (3d Cir. 2005) ("We would permit Bronshtein to attempt on remand to establish a reason to excuse his procedural default, but we find it unnecessary to do so because it is apparent that the claims in question lack

## II.   STANDARD OF REVIEW FOR RELIEF UNDER § 2254

Section 2254 of title 28 of the United States Code sets limits on the power of a federal court to grant a habeas petition to a state prisoner.  See Cullen v. Pinholster, 131 S.Ct. 1388, 1398 (2011).  Section 2254(a) permits a court to entertain only claims alleging that a person is in state custody "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  Where a state court adjudicated petitioner's federal claim on the merits,[2] as in this case, a court "has no authority to issue the writ of habeas corpus unless the [state c]ourt's decision 'was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States', or 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" Parker v. Matthews, 132 S.Ct. 2148, 2151 (2012) (quoting 28 U.S.C. § 2254(d)).  "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong."  Woods v. Donald, 135 S.Ct. 1372, 1376 (2015).  The petitioner carries the burden of proof, and review under § 2254(d) is limited to the record that was before the state court that adjudicated the claim on the merits.  See Harrington v. Richter, 131 S.Ct. 770, 785 (2011).

---

merit.  Under 28 U.S.C. § 2254(b)(2), we may reject claims on the merits even though they were not properly exhausted, and we take that approach here").

[2] "For the purposes of Section 2254(d), a claim has been 'adjudicated on the merits in State court proceedings' when a state court has made a decision that 1) finally resolves the claim, and 2) resolves th[at] claim on the basis of its substance, rather than on a procedural, or other, ground." Shotts v. Wetzel, 724 F.3d 364, 375 (3d Cir. 2013) (citation and internal quotation marks omitted).

5

A court begins the analysis under § 2254(d)(1) by determining the relevant law clearly established by the Supreme Court. See Yarborough v. Alvarado, 541 U.S. 652, 660 (2004). "[C]learly established law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of t[he Supreme Court's] decisions," as of the time of the relevant state-court decision. Woods, 135 S.Ct. at 1376 (quoting White v. Woodall, 134 S.Ct. 1697, 1702 (2014), and Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1) if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams, 529 U.S. at 405-06. Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id., 529 U.S. at 413.

Where a petitioner seeks habeas relief, pursuant to § 2254(d)(2), on the basis of an erroneous factual determination of the state court, two provisions of the AEDPA necessarily apply. First, the AEDPA provides that "a determination of a factual issue made by a State court shall be presumed to be correct [and] [t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 29 U.S.C. § 2254(e)(1); see Miller-El v. Dretke, 545 U.S. 231, 240 (2005). Second, the AEDPA precludes habeas relief unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

6

### III.  DISCUSSION

A.  **Confrontation Clause**

In Ground One Wyatt claims that the trial judge's limitation on his cross-examination of Terrence Sheffield (the only eyewitness to the shooting who testified) concerning his prior activity as a police informant violated the Confrontation Clause and Due Process. Wyatt raised this claim on direct appeal. Relying on Delaware v. Fensterer, 474 U.S. 15, 20 (1985), and Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986), the Appellate Division found that the limitation on cross-examination of Sheffield did not violate the Confrontation Clause or the Due Process Clause.

> The compelling reason for barring defense counsel from asking Sheffield whether he was a confidential informant is obvious, namely, his safety. Furthermore, Sheffield's credibility was more than adequately attacked when defense counsel cross-examined him as to the following: (1) that on the night of the murder he sold drugs to the victim, (2) that he was in the business of dealing drugs at this location and had been for some time, (3) that he had a prior criminal history, (4) that he had charges pending not just in Essex, but in another county, and (5) that he had actually grown up with the victim but had known defendant only for a short time. Any benefit that defendant would have gained by cross-examining Sheffield as to whether he had acted as a confidential informant would have been merely cumulative. Any probative value to defendant would have been outweighed by the potential of harm to Sheffield, if defense counsel's suspicion was borne out, given all the other extensive impeaching information that was admissible. The information as to whether Sheffield was a confidential informant may have been highly relevant, but the jury had ample evidence with which to otherwise assess his credibility. That Sheffield was an established drug dealer alone was a fact having potentially greater impeachment value than his possible status as a confidential informant.

State v. Wyatt, 2008 WLL 877638 at *3-*4 (citations omitted).

The Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." U.S. Const. amend VI. This guarantee applies to both federal and state prosecutions. See Pointer v. Texas, 380 U.S. 400 (1965). "[T]he exposure of a witness' motivation in testifying is a proper and important function

7

of the constitutionally protected right of cross-examination." Davis v. Alaska, 415 U.S. 308, 316-17 (1974). Significantly, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). "[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Id. at 680 (quoting Davis, 415 U.S. at 318).

In Van Arsdall, the state court had barred defense counsel from cross-examining a witness about the state's agreement to dismiss the witness's pending drunk driving charge in exchange for testifying against the defendant. The Supreme Court found that, by "cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause." 475 U.S. at 679. The Supreme Court emphasized that, while the exposure of a witness' motive is an important function of the constitutionally protected right of cross-examination,

> [i]t does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into potential bias of a prosecution witness. On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant. And as we observed . . . "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way and to

8

> whatever extent, the defense might wish." Delaware Fensterer, 474 U.S. 15, 20 . . . (1985) (*per curiam*) (emphasis in original).
>
> In this case, however, the trial court prohibited *all* inquiry into the possibility that Fleetwood would be biased as a result of the State's dismissal of his pending public drunkenness charge. By thus cutting off all questioning about an event that the State conceded had taken place and that a jury might reasonably have found furnished the witness a motive for favoring the prosecution in his testimony, the court's ruling violated respondent's rights secured by the Confrontation Clause.

Van Arsdall, 475 U.S. at 679 (emphasis in original) (footnote omitted); see also Crane v. Kentucky, 476 U.S. 683, 690 (1986) ("we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability - even if the defendant would prefer to see that evidence admitted").

In applying Van Arsdall, "circuit courts generally have agreed that whether a trial court has abused its discretion in limiting the cross-examination of a witness for bias depends on whether the jury had sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivation of the witnesses." United States v. Chandler, 326 F.3d 210, 219 (3d Cir. 2003) (citations and internal quotation marks omitted). The Third Circuit Court of Appeals noted that, under Van Arsdall, "[w]hether the denial appears to have been harmful depends on the importance of the witness' testimony, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and the overall strength of the prosecution's case." United States v. Riggi, 951 F.2d 1368, 1376 (3d Cir. 1991).

In this case, Wyatt failed to demonstrate either at trial or on appeal that the jury might have reached a different conclusion had it learned more about Sheffield's prior cooperation with the

9

police. The New Jersey courts found in essence that Wyatt failed to show that "'[a] reasonable jury might have received a significantly different impression of [the witness'] credibility had [defense counsel] been permitted to pursue his proposed line of cross-examination.'" Olden v. Kentucky, 488 U.S. 227, 232 (1988) (quoting Van Arsdall, 475 U.S. at 680). This reasoning is consistent with Supreme Court precedent and the state courts' limitation on the cross-examination of Sheffield with respect to his prior police cooperation was not contrary to, or an unreasonable application of Van Arsdall or other Supreme Court holdings on the Confrontation Clause. See United States v. Friedman, 658 F.3d 342, 356-57 (3d Cir. 2011(holding that District Court's limitation of the scope of cross-examination of state's witness was reasonable and did not deny defendant's right to confront witnesses). Accordingly, Wyatt is not entitled to habeas relief on Ground One.

**B. Due Process: Refusal to Instruct on Lesser Included Offenses**

In Ground Two Wyatt claims that the trial court's refusal to instruct the jury regarding the elements of the lesser included offenses to first-degree murder - passion provocation manslaughter, aggravated manslaughter and reckless manslaughter - deprived him of due process. Wyatt raised this claim on direct appeal, arguing that the denial of the requested lesser included offense instructions violated due process because the evidence supported these lesser included offenses. The Appellate Division and the trial judge rejected the claim on the ground that the evidence did not support a finding of guilt on the lesser included offenses:

> Shooting a gun at a victim from a distance of three feet is more than extreme indifference to the value of human life or mere reckless conduct. It is conduct which rationally supports no other finding than that defendant acted deliberately and intentionally to cause Leakes's death. It is conduct which established the requisite mental state for murder. It was not conduct intended to merely intimidate, it was conduct intended to kill . . . . [W]e concur that there was no

10

>rational basis for the judge to charge the lesser included offenses of passion-provocation, aggravated or reckless manslaughter.

State v. Wyatt, 2008 WL 877638 at *5.

A habeas petitioner who challenges state jury instructions must "point to a federal requirement that jury instructions on the elements of an offense . . . must include particular provisions" or demonstrate that the jury "instructions deprived him of a defense which federal law provided to him." Johnson v. Rosemeyer, 117 F.3d 104, 110 (3d Cir. 1997). However, as explained below, the failure to give the lesser-included crime instructions for murder was not contrary to, or an unreasonable application of Supreme Court precedent because (1) the Supreme Court has never held that the Due Process Clause guarantees the right of a defendant to have the jury instructed on a lesser included offense in a non-capital case, and (2) the lesser included offense instruction is constitutionally required in a capital case only when warranted by the evidence and the New Jersey courts found in this case that the requested lesser included offense charges were not supported by the evidence.

In Beck v. Alabama, 447 U.S. at 627, the Supreme Court held that the death penalty may not be imposed "when the jury was not permitted to consider a verdict of guilt of a lesser included non-capital offense, and when the evidence would have supported such a verdict." See also Hopper v. Evans, 456 U.S. 605, 611 (1982) (holding that due process does not require lesser included offense instruction in death penalty case where there is no lesser included offense under state law); Larry v. Branker, 552 F.3d 356, 366-68 (4th Cir. 2009); Brown v. Sirmons, 515 F.3d 1072, 1085-88 (10th Cir. 2008); Boltz v. Mullin, 415 F.3d 1215, 1233-34 (10th Cir. 2005).

In this case, the New Jersey courts found that the evidence did not rationally support any lesser included offense. Any error of state law regarding this determination cannot form the basis

11

for habeas relief as habeas relief is not available for violations of state law. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) ("[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."); Engle v. Isaac, 456 U.S. 107, 119 (1982) ("Insofar as respondents simply challenge the correctness of the self-defense instructions under Ohio law, they allege no deprivation of federal rights and may not obtain habeas relief"). In addition, the finding that the evidence did not support a manslaughter instruction is entitled to a presumption of correctness under 28 U.S.C. 2254(e)(1) and Wyatt has not rebutted this presumption of correctness by clear and convincing evidence. Habeas relief is not warranted on this ground because this is not a death penalty case[3] and because the failure to instruct on a lesser included offense does not violate due process where such an instruction is not supported by the evidence and the New Jersey courts' determination that the evidence did not warrant a manslaughter instruction must be presumed to be correct. See Kontakis v. Beyer, 19 F.3d 110, 119 (3d Cir. 1994).

To be sure, the Supreme Court has stated that the failure to give an instruction may violate due process where the error "so infected the entire trial that the resulting conviction violate[d] due process." Henderson v. Kibbe, 431 U.S. 145, 154 (1997) (citation omitted). However, the Court agrees with the New Jersey courts' finding that, if believed, the evidence against Wyatt did not provide a rational basis for a manslaughter instruction. Accordingly, Wyatt has not shown that

---

[3] See Beck, 447 U.S. at 635 ("[W]e need not and do not decide whether the Due Process Clause would require the giving of such instructions in a noncapital case"). Although the Third Circuit has extended Beck to noncapital cases, see Vujosevic v. Rafferty, 844 F.2d 1023 (3d Cir. 1988), § 2254(d)(1) does not permit the Court to grant habeas relief on the basis of circuit precedent. See Marshall v. Rodgers, 133 S.Ct. 1446, 1450 (2013) (holding that circuit precedent may not be used under § 2254(d)(1) "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that this Court has not announced.")

there was an error that infected the entire trial and violated due process, and he is not entitled to habeas relief.

To summarize, this Court finds that the New Jersey courts' adjudication of this due process claim was not based on an unreasonable determination of the facts in light of the evidence presented and did not result in a decision that was contrary to, or involved an unreasonable application of clearly established Supreme Court precedent.

C.  **Ineffective Assistance of Counsel:   Failure to Object to Prosecutor's Comments**

In Ground Three, Wyatt asserts that trial counsel was constitutionally ineffective in failing to object to the prosecutor's summation.   In Ground Four he contends that appellate counsel was ineffective in failing to raise the improper nature of the prosecutor's summation on direct appeal. As factual support, Wyatt claims that counsel was deficient in failing to object to the prosecutor's comments during summation (1) that the soft spoken nature of the testimony of Shawn Bell showed that Bell was scared of Wyatt, and (2) that Wyatt shot Leakes to show Terrence Sheffield and Leakes that Wyatt was in control of the situation and was running the show.

As the appellate court acknowledged in Wyatt's case, the Sixth Amendment guarantees the accused the "right . . . to have the Assistance of Counsel for his defense."   U.S. Const. amend. VI. The right to counsel is the right to the effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance.   See Strickland v. Washington, 466 U.S. 668, 686 (1984).   A claim that counsel's assistance was so defective as to require reversal of a conviction has two components, both of which must be satisfied.   Id. at 687. First, the defendant must "show that counsel's representation fell below an objective standard of reasonableness."   Id. at 687-88.   To meet this prong, a "convicted defendant making a claim of

13

ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The court must then determine whether, in light of all the circumstances at the time, the identified errors fell "below an objective standard of reasonableness[.]" Hinton v. Alabama, 134 S.Ct. 1081, 1083 (2014) (per curiam). To satisfy the prejudice prong, "a defendant need not show that counsel's deficient conduct more likely than not altered the outcome in the case." Strickland at 693. [4] To establish prejudice, the defendant must show that "there is a reasonable probability that the result of the trial would have been different absent the deficient act or omission." Hinton, 134 S.Ct. at 1083. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 1089 (quoting Strickland, 466 U.S. at 695).

"The 'clearly established Federal law' relevant [to a prosecutorial misconduct claim] is [the Supreme Court's] decision in Darden v. Wainwright, 477 U.S. 168 . . . (1986), which explained that a prosecutor's improper comments will be held to violate the Constitution only if they 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Parker v. Matthews, 132 S.Ct. 2148, 2153 (2012) (quoting Darden at 181 and Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974)). This occurs only if the misconduct constitutes a "failure to observe that fundamental fairness essential to the very concept of justice." Donnelly

---

[4] The reasonable probability standard is less demanding than the preponderance of the evidence standard. See Nix v. Whiteside, 475 U.S. 157, 175 (1986); Baker v. Barbo, 177 F.3d 149, 154 (3d Cir. 1999).

at 64. It is not enough to show that the prosecutor's conduct was universally condemned. See Darden at 181.

Wyatt raised these ineffective assistance of trial and appellate counsel claims on post-conviction relief. The trial court and the Appellate Division rejected the claims on the ground that defense counsel was not constitutionally deficient in failing to object to these comments. Specifically, the Appellate Division found:

> In the appellate brief filed by his attorney, defendant claims that his trial counsel was deficient for failing to object to two summation comments made by the prosecutor. In the first, defendant claims the prosecutor committed misconduct by expressing a motive for the crime that was not supported by the evidence, namely that defendant killed Leakes due to a power struggle between defendant and Sheffield. In the second, defendant argues the prosecutor improperly suggested that Bell was quiet and timid on the witness stand because he feared defendant.
>
> We agree with Judge Vichness that there was no impropriety in the prosecutor's statements. The inferences the prosecutor urged the jury to draw were based upon trial evidence. Any objection would have been rejected by the trial court. Likewise, appellate counsel was not deficient for failing to raise this argument on appeal, and had it been raised, it would have been rejected.

State v. Wyatt, 2011 WL 589500 at *3.

Wyatt has not shown that the New Jersey courts' determination was contrary to, or an unreasonable application of Strickland or other Supreme Court precedent. As the Supreme Court explained, "[w]hen § 2254(d) applies the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington v. Richter, 562 U.S. 86, __, 131 S.Ct. 770, 788 (2011). Accordingly, Wyatt is not entitled to habeas relief on these ineffective assistance of counsel grounds. See United States v. Leggett, 162 F.3d 237, 247 (3d Cir. 1998) ("[T]here is no constitutional right to be represented by a lawyer who agrees with the defendant's trial strategy.

15

Mere disagreement between defendant and counsel with regard to strategic decisions does not create a situation severe enough to compel a district court to investigate whether the defendant's rights are being impinged[.]") (citing United States v. Taylor, 128 F.3d 1105, 1108 (7th Cir. 1997).)

**D.      Ineffective Assistance of Counsel:   Failure to Object to Use of Informer's Privilege**

In Ground Five, Wyatt asserts that trial counsel was constitutionally deficient in failing to object to the trial court's erroneous application of the Informer Privilege.  As factual support, Wyatt states that during the cross-examination of Terrence Sheffield, the trial court sustained the prosecutor's objection to questions concerning Sheffield's prior behavior of acting as an informant for the police because revealing Sheffield's status as a police snitch endangered his safety.  Wyatt contends that it "was unreasonable and unprofessional for counsel to remain silent in the face of a gross misinterpretation of state established law.  If counsel's decision not to object or to elaborate on the State's misrepresentation of law was to be viewed as some defense strategy, there is no valid evaluation of professional norm[s] with which to compare something so obviously flawed and outside the prevailing professional norm[s,] thus satisfying the first prong by demonstrating the extent to which counsel's performance was deficient and counsel's inaction was not sound strategy."  (ECF No. 3 at 25-26) (paragraph numbers omitted).

Wyatt raised this ineffective assistance claim on post-conviction relief.  The trial and appellate courts rejected the ground because Wyatt had raised it on direct appeal:  "In his supplemental pro se brief, defendant attempts to relitigate an issue that was raised, considered and rejected on direct appeal, namely, whether the State should have been required to disclose the identity of the confidential informant.  More particularly, at trial defendant sought to establish that Sheffield was indeed a confidential informant.  Judge Vichness precluded defendant from

doing so, and we affirmed that determination on direct appeal." State v. Wyatt, 2011 WL 489500 at *3.

As noted above, on direct appeal the Appellate Division found that the limitation on cross-examination of Sheffield did not violate the Confrontation Clause or the Due Process Clause. This Court has determined that this ruling was not contrary to, or an unreasonable application of Supreme Court precedent. This Court finds that counsel was not constitutionally deficient in failing to continue arguing with the trial judge after the trial judge had ruled that defense counsel would not be permitted to cross-examine Sheffield concerning his previously acting as a confidential informant. See Ross v. District Attorney of the County of Allegheny, 672 F.3d 198, 211 n.9 (3d Cir. 2012) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.") (quoting Werts v. Vaughn, 228 F.3d 178, 202 (3d Cir. 2000)).

**E.     Ineffective Assistance of Counsel:   Failure to Properly Investigate**

In Ground Six, Wyatt asserts that counsel was constitutionally deficient in failing to "investigate obvious significant avenues of defense, including the calling of a witness who would have directly exculpated Defendant." (ECF No. 1 at 28.) As factual support, Wyatt states that he was entitled to the records concerning all contacts between Terrence Sheffield and Detective Carter, but Wyatt does not identify the exculpatory witness or describe the purported testimony of this witness. Wyatt raised this claim on appeal from the order denying post-conviction relief, arguing in his pro se supplemental brief that trial counsel was deficient for failing to call Detective Carter as a witness or, at least, to interview Carter to find out if other potentially helpful witnesses or evidence might be available. See State v. Wyatt, 2011 WL 589500 at *4. The Appellate Division rejected the claim as follows:

17

> We agree with Judge Vichness that defendant proffered no reasonable basis for which Detective Carter should have been called as a defense witness. Detective Carter would have been precluded from testifying as to what the confidential informant told him because such testimony would constitute inadmissible hearsay. Detective Carter would also have been precluded from identifying the confidential informant under Judge Vichness' ruling that disclosure was not warranted, a ruling which we affirmed on direct appeal. Finally, in the PCR proceeding, defendant did not produce an affidavit or certification from Detective Carter or anyone else to make a prima facie showing that interviewing Detective Carter would have revealed the identity of any other witness who might have been helpful to the defense and what that witness would have testified to.

See State v. Wyatt, 2011 WL 589500 at *4.

Wyatt argues that counsel's failure to conduct further investigation about Sheffield's statements to Detective Carter constituted ineffective assistance of counsel. However, in the absence of an affidavit from Detective Carter, Wyatt has not even sufficiently asserted deficient performance or prejudice. Prejudice "requires more than just a 'conceivable' likelihood of a different result." Grant v. Lockett, 709 F.3d 224, 235 (3d Cir. 2013) (quoting Harrington v. Richter, 131 S.Ct. 770, 792 (2011)); see also Duncan v. Morton, 256 F.3d 189201-202 (3d Cir. 2001) (observing that a showing of prejudice "may not be based on mere speculation about what the witness[] [his attorney] failed to locate might have said[.]") (quoting United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989)).[5] Here, Wyatt's failure to include a sworn statement regarding

---

[5] The Gray court relied on United States v. Velenzuela-Bernal, 458 U.S. 858 (1982), wherein the Supreme Court found that the deportation of a potential witness, whose testimony could conceivably benefit the defendant, before defense counsel had an opportunity to interview him, did not violate the Due Process Clause or the Compulsory Process Clause: "Given the vagaries of a typical jury trial, it would be a bold statement indeed to say that the testimony of any missing witness could not have 'conceivably benefited' the defense. To us, the number of situations which will satisfy this test is limited only by the imaginations of judges or defense counsel." Id. at 866-67.

the nature of Carter's proposed testimony or evidence is fatal to his making a *prima facie* showing of prejudice. See Duncan, 256 F.3d at 202 ("In light of Duncan's failure to present any sworn testimony by [the potential witness], he has failed to establish prejudice as a result of [counsel's] alleged failure to interview [the witness]."); United States v. Dawson, 857 F.2d 923, 928-29 (3d Cir. 1988) (holding in § 2255 case that the district court properly dismissed ineffective assistance of counsel claim where, inter alia, Dawson did not submit an affidavit stating what a proposed witness would have testified); Karamanos v. United States, Civ. No. 04-0171 (JEI), 2005 WL 2777552 *4 (D.N.J. Oct. 24, 2005) (rejecting ineffective assistance of counsel claim without an evidentiary hearing in § 2255 case based on counsel's failure to call witnesses because "the Court cannot conclude that Petitioner was prejudiced by counsel's failure to investigate or call these individuals as witnesses because Petitioner has failed to provide a sworn statement of facts from any of the [witnesses] detailing their proposed testimony.")  As Wyatt failed to assert prejudice, the New Jersey courts' rejection of this ineffective assistance of counsel claim was not contrary to, or an unreasonable application of Strickland and its progeny.

**F.     Certificate of Appealability**

Wyatt has not made a substantial showing of the denial of a constitutional right. Therefore, no certificate of appealability will issue pursuant to 28 U.S.C. § 2253(c)(1)(B).  See Fed. R. App. P. 22(b)(1); 3d Cir. L.A.R. 22.2.

## IV.  CONCLUSION

This Court dismisses the Petition with prejudice and denies a certificate of appealability.

    s/Dickinson R. Debevoise
**DICKINSON R. DEBEVOISE**
**U.S.S.D.J.**

Dated:   April 22, 2015

20